**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Morrow,<br><br>               Plaintiff,<br><br>v.<br><br>Steven Temple, *et al.*,<br><br>               Defendants. | No. CV-19-0202-TUC-JAS (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendants Steven Temple, Kimberly Temple, and 4 Ropin Ranch, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 39). Plaintiff has filed a response in opposition to Defendants' motion to dismiss, and they have replied. Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss 2d Amended Compl. Pursuant to Red. R. Civ. P. 12(b)(1) for Lack of Subj. Matter Juris. (Doc. 42); Defs.' Reply (Doc. 43).

In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument. The Magistrate Judge recommends that the District Court deny Defendants Steven Temple, Kimberly Temple, and 4 Ropin Ranch, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 39).

## I.     PROCEDURAL BACKGROUND

Plaintiff Ryan Morrow, a Texas resident, filed this cause of action against Steven

Temple and Kimberly Temple, residents of Arizona, and 4 Ropin Ranch, Inc., an Arizona corporation. *See* Compl. (Doc. 1). This original complaint was filed in the Northern District of Texas. *See id.* The original complaint was filed pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332(a) and alleged that "Plaintiff ha[d] incurred more than $25,000 in economic damages and more than $50,000 in mental anguish and other non-economic damages arising from Defendants' fraudulent and deceptive conduct and breach of an agreement to provide substitute goods." *Id.* at ¶ 5. Plaintiff further alleged that he had "also already incurred in excess of $15,000 in attorneys' fees through the date of this filing in connection with this dispute[.]" *Id.* Plaintiff's complaint alleged causes of action for fraudulent inducement and breach of the replacement agreement, as well as a notice of intent to file a claim under the Texas Deceptive Trade Practices Act. *Id.* at ¶¶ 40–54.

On February 4, 2019, Defendants' filed a Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Transfer Venue and, in the Alternative, Motion to Dismiss for *Forum Non-Conveniens* and for Failure to Plead Fraud with Particularity (Doc. 7). Prior to filing a response to Defendants' motion (Doc. 7), Plaintiff filed his First Amended Complaint ("FAC") (Doc. 15). The FAC alleged identical economic and non-economic damages as the original complaint, but the amount of attorneys' fees was increased to $27,000. FAC (Doc. 15) at ¶ 5. Plaintiff's FAC alleged causes of action for 1) fraudulent inducement; 2) breach of the replacement agreement; 3) violations of the deceptive trade practices act; 4) alter ego; and 5) fraud by omission. The parties went on to finish briefing on Defendants' then pending motion to dismiss (Doc. 7). Upon consideration of the parties' filings, the district judge for the Northern District of Texas enforced the forum selection clause contained within the Purchase Agreement and transferred the case to this Court. Order 3/28/2019 (Doc. 21). The Texas court made no findings or judgment regarding the Defendants' motion to dismiss (Doc. 7). *See* Order 3/28/2019 (Doc. 21), docket text.

Upon transfer to this Court, Defendants filed a second Motion to Dismiss (Doc. 33) for lack of subject matter jurisdiction, alleging Plaintiff has failed to meet the jurisdictional

amount in controversy. On June 4, 2019, Plaintiff filed his Second Amended Complaint ("SAC") (Doc. 35).[1] Plaintiff's SAC alleges identical economic and non-economic damages as the original complaint, but the amount of attorneys' fees was increased to $58,849.00. SAC (Doc. 35) at ¶ 5. The SAC alleges causes of action for 1) fraudulent inducement; 2) breach of the purchase agreement; 3) breach of the replacement agreement; 4) breach of the boarding agreement; 5) violation of the Arizona Consumer Fraud Act ("ACFA"); 6) alter ego; 7) fraud by omission; 8) unjust enrichment; and 9) breach of the implied covenant of good faith and fair dealing. Defendants filed their now pending Motion to Dismiss Second Amended Complaint (Doc. 39).

## II.    FACTUAL BACKGROUND[2]

In August of 2018, Plaintiff Ryan Morrow was searching for a roping horse in order to ride in two competitions for which he had qualified that Fall. SAC at ¶ 7. Plaintiff's search lead him to Defendant 4 Ropin Ranch Inc.'s website. *Id.* at ¶ 8–9. Defendants Steven and Kimberly Temple are the owners and operators of Defendant 4 Ropin Ranch, Inc. *Id.* at ¶¶ 2–4. Plaintiff decided to purchase a horse named Big Rig from Defendants. *Id.* at ¶¶ 9–12. In reaching this decision, Plaintiff relied on statements and omissions made by Defendants both on their website and in person via telephone. *Id.* at 11–13. On August 20, 2018, Defendant Steven Temple sent Plaintiff a Purchase Agreement and Bill of Sale for Big Rig ("PA"). SAC at ¶ 14. Ultimately, the Parties executed the PA and Plaintiff purchased Big Rig for $19,550.00. *Id.* at ¶ 17.

Defendants shipped Big Rig to Texas for delivery to Plaintiff. *Id.* at ¶ 18. When

---

[1] A party is allowed to "amend its pleading once as a matter of course[,]" within certain limitations. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court notes that Plaintiff failed to seek or receive leave of court to file its Second Amended Complaint (Doc. 35). The Court will construe Defendants' second motion to dismiss (Doc. 39) as tacit agreement to the filing of the SAC.

[2] For purposes of this Report and Recommendation only, the Court accepts as true the factual allegations contained in Plaintiff's SAC (Doc. 35) to the extent that they provide context for this cause of action.

Big Rig arrived, Plaintiff noticed that he was exhibiting signs of lameness in his front legs. *Id.* at ¶ 19. Plaintiff rested Big Rig for several days before riding him. *Id.* Plaintiff's initial ride around his property was uneventful, but when he attempted roping, Big Rig behaved erratically and bucked Plaintiff off. SAC at ¶ 20. Plaintiff had Big Rig examined by a veterinarian, and Plaintiff ultimately concluded that Big Rig was not suitable for competition. *Id.* at ¶ 23. Plaintiff negotiated a Replacement Agreement ("RA") with Defendant Steven Temple, by which 4 Ropin Ranch would take Big Rig back and issue Plaintiff inhouse credit for the purchase price of Big Rig and allow Plaintiff to select a suitable replacement. *Id.* at ¶ 23. The parties also executed a Boarding Agreement and a Consignment Agreement ("BA"). *Id.* at ¶ 24. Big Rig was eventually transported back from Texas to Arizona and Defendant Steven Temple took possession of Big Rig but refused to provide a replacement. *Id.* at ¶¶ 25–33. Defendants continued to refuse to provide Plaintiff with a selection of potential replacement horses and refused to refund his money, alleging that the horse returned from Texas lame and demanding that Plaintiff pay for Big Rig's medical bills. SAC at 34. Plaintiff ultimately purchased another roping horse to ride in competition, from a different vendor, for $30,000. *Id.* at ¶ 36.

## III.    STANDARD OF REVIEW

This matter is before the Court on Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction. In "considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *Id.* (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 1011 n.4, 91 L. Ed. 1209 (1947)). Further, in attacks on subject matter jurisdiction pursuant to Rule 12(b)(1), Plaintiffs bear "the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *In Re: Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80

L. Ed. 1135 (1936) ("The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court."). Where a party attacks "a complaint's jurisdictional allegations despite their formal sufficiency . . . [i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The Court need not consider unreliable evidence, and "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* Moreover, Plaintiff has an "obligation to provide the 'grounds' of his 'entitlement to relief' requir[ing] more than labels and conclusions[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed.2d 929 (2007).

## IV.    ANALYSIS

Defendants brought their Motion to Dismiss Second Amended Complaint (Doc. 39) pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, seeking dismissal for lack of subject matter jurisdiction alleging that Plaintiff cannot meet the amount in controversy requirement.

Federal courts are courts of limited jurisdiction. U.S. Const. art. III. A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court also has original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938). "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover

the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *Id.* Further, in a diversity case, federal courts "look to state law to determine the nature and extent of the right to be enforced." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352–53, 81 S. Ct. 1570, 1573, 6 L. Ed.2d 890 (1961).

The Ninth Circuit Court of Appeals has "defined the amount in controversy as the amount at stake in the underlying litigation, . . . includ[ing] any result of the litigation, excluding interests and costs, that entail[s] a payment by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quotations and citations omitted) (last alteration in original). "This amount includes, *inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Id.* at 648–49 (citations omitted). Moreover, "[t]he amount in controversy is not a prospective assessment of [a] defendant's liability[,] . . . [r]ather, it is the amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (quotations and citations omitted) (second alteration in original). "In assessing the amount in controversy, [the Court] may consider allegations in the complaint[,] . . . as well as summary-judgment-type evidence relevant to the amount in controversy." *Id.* at 416 (citations omitted).

### A.    Contract Damages

It is undisputed that Plaintiff can claim damages related to the purchase and return of Big Rig. "Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract." *All Am. Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233, 609 P.2d 46, 48 (Ariz. 1980) (citations omitted). Plaintiff has incurred the following damages (excluding attorneys' fees) from the alleged breach:

$19,550.00    Sale price of Big Rig

| | |
|---|---|
| $10,450.00 | Additional cost for substitute horse |
| $ 5,650.00 | Transportation and medical care for Big Rig |

Pl.'s Response (Doc. 42) at 8. Thus, Plaintiff's claimed damages, exclusive of attorneys' fees, for the alleged breach total $35,650.00.

### B. Emotional Distress Damages

"[I]n Arizona, a party may recover damages for emotional distress arising out of the tortious loss of property where the tortious act directly harmed the plaintiff and affected or burdened a personal, as opposed to an economic or other interest belonging to the plaintiff." *Murray v. Farmers Ins. Co. of Ariz.*, 2016 WL 7367754, *7 (Ariz. Ct. App. January 19, 2016) (citing *Kaufman v. Langhofer*, 223 Ariz. 249, 253, 222 P.3d 272, 276 (Ariz. Ct. App. 2009). "Examples of personal damages are the loss of liberty or damage to a family relationship." *Id.* (citing *Reed v. Mitchell & Timbanard, P.C.*, 283 Ariz. 313, 318–19, 903 P.2d 621, 626–27 (Ariz. Ct. App. 1995)). "In contrast, [Arizona courts] have precluded the recovery of emotional distress damages where the plaintiff's interest was determined to be 'purely economic.'" *Id.* (citing *Reed*, 283 Ariz. at 319, 903 P.2d at 627); *see also Kaufman*, 223 Ariz. 249, 222 P.3d 272 (holding pet owner could not recover emotional distress damages based on loss of a pet due to veterinarian's negligence because harm did not burden a personal right or interest of plaintiff). To the extent that Plaintiff is seeking remedies under a breach of contract theory, he is not entitled to emotional distress damages. *See Cook v. Orkin Exterminating Co., Inc.*, 227 Ariz. 331, 335, 258 P.3d 149, 153 (Ariz. Ct. App. 2011) (holding the economic loss rule barred plaintiffs' tort claims).

### C. Arizona Consumer Fraud Act

The Arizona Consumer Fraud Act ("ACFA") "makes it unlawful to use 'any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact' when selling or advertising merchandise." *Shaw v. CTVT Motors, Inc.*, 232 Ariz. 30, 31, 300 P.3d 907, 908–09 (Ariz. Ct. App. 2013) (quoting A.R.S. § 44-1522(A)). "The [ACFA] provide[s] injured consumers with a remedy to counteract the disproportionate bargaining power often present

in consumer transactions." *Id.* at 32, 300 P.3d at 909 (quotations and citations omitted). In furtherance of the remedial goals, the Arizona supreme court has recognized a private right of action under the AFCA. *Id.* at 909 (citing *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575–76, 521 P.2d 1119, 1121–22 (Ariz. 1974)). In order to prevail, "a plaintiff must establish that (1) the defendant made a misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016) (citing *Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 591 P.2d 1005, 1008 (Ariz. Ct. App.1979)). Furthermore, "Arizona's economic loss rule does not apply to private causes of action under the [A]CFA." *Shaw*, 232 Ariz. at 33, 300 P.3d at 910. As such, although Plaintiff may not be able to recover emotional distress damages under a breach of contract theory, those damages may be recoverable under the ACFA. At this time, the amount is not quantified, but the damages are "at stake" in the litigation. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018).

### D.    *Punitive Damages*

"Punitive damages are not usually awarded in contract actions, unless there is an accompanying tort." *Miscione v. Bishop*, 130 Ariz. 371, 374–375, 636 P.2d 149 (App.1981); *see also* Restatement (Second) Contract § 355 (1981). In Arizona, punitive damages are available under a consumer fraud  cause of action, as well as claims for fraudulent inducement. *See Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, 55 P.3d 763 (Ariz. 2002) (noting the availability of punitive damages for consumer fraud claims and holding equitable claims, such as rescission, also support punitive damages). Plaintiff has brought the tort claim of fraud in the inducement and a consumer fraud claim. "To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind.'" *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132, 907 P.2d 506, 518 (Ariz. Ct. App.1995) (quoting *Thompson v. Better–Bilt Aluminum Prod. Co.*, 171 Ariz. 550, 832 P.2d 203, 209 (Ariz.1992)). "A defendant acts with the requisite evil mind when

he intends to injure or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the unjustifiable substantial risk of significant harm to them.'" *Id.* (quoting *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 680 (Ariz.1986)). Factors for consideration include "(1) the reprehensibility of defendant's conduct and the severity of the harm likely to result, (2) any harm that has occurred, (3) the duration of the misconduct, (4) the defendant's awareness of the harm or risk of harm, and (5) any concealment of it." *Hyatt Regency*, 184 Ariz. at 132, 907 P.2d at 518. Plaintiff's Second Amended Complaint (Doc. 35) alleges that Defendants had previously sold Big Rig to another buyer prior to Plaintiff and that Defendants had lied to that buyer, as well as Plaintiff. Plaintiff further alleges that Defendants purposefully mislead him throughout the course of their business relationship. *See id.* These facts are sufficient to support a claim for punitive damages.

### E.    Attorneys' Fees

The Ninth Circuit Court of Appeals has explained that the amount in controversy "encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 791 (9th Cir. 2018) (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018)). Attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy calculation. *Id.*, at 793. The *Fritsch* court considered "whether attorneys' fees incurred after removal were properly included in the amount in controversy . . . [and] conclude[d], in light of *Chavez* and [its] precedents, that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (citations omitted); *see also Degon v. USAA Casualty Ins. Co.*, 2019 WL 5889301 (D. Ore. November 12, 2019) (applying *Fritsch* in a breach of contract case). The court further noted that "if the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is not question that future [attorneys' fees] are at stake in the litigation." *Id.* (quotations and citations omitted) (alteration in original).

Plaintiff's attorneys' fees were $15,000.00 at the outset of this litigation. Pl.'s Original Compl. (Doc. 1) at ¶ 5. At the time of filing his response, Plaintiff's attorneys' fees were estimated to be $63,424.00. Pl.'s Response (Doc. 42), Wcislo Aff. at ¶¶ 3, 11. Defendants assert that "Plaintiff cannot spend his way to subject matter jurisdiction." Defs.' Reply (Doc. 43) (citing *Dukes v. Twin City Fire Ins. Co.*, 2010 WL 94109 (D. Ariz. 2010)). Defendants do not, however, address the impact of the Ninth Circuit's opinion in *Fritsch*, which notes that "[a]t the time of the district court's ruling, district courts in the Ninth Circuit were split on whether a court could include future attorneys' fees in the amount in controversy[,]" specifically noting the *Dukes* opinion. *Fritsch*, 899 F.3d at 790 n.2. It is undisputed that at this juncture, Plaintiff has incurred $63,424.00 in attorneys' fees. Even if the Court were only to consider the $15,000.00 spent at the time of filing as incurred to date, it is not unreasonable to expect that the remaining $48,424.00 would be incurred over the course of this litigation. As such, it is "at stake" in the litigation and shall be considered in the amount in controversy. *Chavez*, 888 F.3d at 417; *Fritsch*, 899 F.3d at 794.

### F.    Conclusion

Plaintiff's alleged breach of contract damages of $35,650.00 plus attorneys' fees of $63,424.00 equals $78,424.00. Additionally, Plaintiff's claims for consumer fraud and fraudulent inducement increase that total. As such, the Court finds that Plaintiff's claims allege more than the $75,000.00 minimum amount in controversy necessary to sustain diversity jurisdiction.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Defendants' Motion to Dismiss Second Amended Complaint (Doc. 39).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after

being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-19-0202-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 4th day of March, 2020.

Honorable Bruce G. Macdonald
United States Magistrate Judge